In the Matter of the Assignment of RUDOLPH MARKLIN *et al.*, to WILLIAM R. WILDER, for the Benefit of Creditors.

(Decided March 13th, 1885).

Where an assignee for the benefit of creditors carries on the former business of the assignor, and it does not appear that such continuance was a benefit to the estate, he will not be allowed the expenses thereby incurred, nor will he be charged with the gross receipts of such business. He should be charged with the value of the assets as they came into his hands, and allowed the ordinary expenses of administering his trust.

Upon an appeal by an assignee for benefit of creditors from a final decree upon his accounting, if no contesting creditor has appealed from the decree, it should be affirmed, notwithstanding the sum properly chargeable to the assignee appears to be greater than the amount with which he is charged in the decree.

Upon a reference of an accounting by an assignee for benefit of creditors under section 20 of the General Assignment Act of 1877, the referee has no power to consider a claim made against the funds in the assignee's hands on the ground that he had converted goods of the claimants to the use of the estate. Such a claim might be the subject of a trial under section 26 of the act ; but without such a trial, the relief asked cannot be obtained by filing exceptions to the report of the referee and appealing from the decree upon the accounting.

APPEALS from a decree of this court entered upon the report of a referee upon an accounting by an assignee for the benefit of creditors.

The assignment of Markham & Orsor, merchant tailors,

was filed on April 22nd, 1880. From that date to May 29th, 1880, the assignee continued the business, made up the stock into suits of clothing, completed work in progress, employed the assignors at salary to conduct the business &c. The inventory and schedules were made up and filed on May 14th, 1880, after the assignee had been conducting the business for two weeks. They were made up by the assignor Orsor, under the direction of the assignee. They showed $14,311.21 of liabilities. As to assets they set forth:

Book accounts (nominal value), . $4,237.70 (actual), . $1,243.50
Stock, " 1,923.43 " 1,416.71
Fixtures, " 1,000 " 233.50

The items of book accounts, stock and fixtures were not given in the printed case on appeal.

The account of the assignee dated December 27th, 1881, was substantially as follows :

**Dr.**

Receipts, while the assignee conducted the business, from sale of merchandise to parties not enumerated in inventory and schedules (Schedule A, I, 1), · . . . . . $1,401.16
Collections from debtors enumerated in inventory, made during same period (Schedule A, I, 2), . . . . 471.50
Sale of cloths, fixtures, &c., at auction on May 29th, 1880 (Schedule A, II), . . . . . . . . 1,027.72
Outstanding book accounts collected after May 29th, 1880, from debtors enumerated in the inventory and schedules (Schedule A, III), . . . . . . . . 958.42
Auction of book accounts December 2d, 1881 (Schedule A, IV) 10
Collections of property not included in the inventory and collections from parties who bought stock while the assignee was supervising the business (Schedule B), · . . . 330.25

                                                                $4,199.05
**Cr.**

Expenses incurred by the assignee while conducting the business (Schedule C), . . . . . . . $1,572.06
Expenses incurred by assignee and not enumerated in last schedule (Schedule C, 2), . . . . . . 685.21
Preferred claims paid (Schedule D, 1), . . . . · 1,284.83
Balance in hands of assignee for distribution and expenses of accounting, . . . . . . · . . 656.95

                                                                $4,199.05

Matter of Marklin.

Upon the reference of the account the assignee presented a supplementary account making a different statement as to the result of his conducting the business. It was substantially as follows :

**Dr.**

Receipts from goods sold and delivered as per Schedule A, I, 1, $1,401.16
From ditto but collected subsequently to May 29th, 1880, as
   per Schedule B,  .   .   .   .   .   .   .   .      285.25
                                                          ──────────
                                                          $1,686.41
Collections from inventoried debtors but whose goods were
   made up mainly under assignee,  .   .   .   .   .      471.50
    (This is Schedule A, I, 2, in gross).
Auction sale ($1,037.72).
                                                          ──────────
                                                          $2,157.91
**Cr.**

Expenses, salaries of assignors and their bookkeeper
   during the same period,  .   .   .   .   $305
Salaries cutter and tailors for ditto,  .   .   .    230
Rent,  .   .   .   .   .   .   .   .    230
Merchandise and incidentals,  .   .   .   .    272.82
Tailors for work done outside, .   .   .   .    394.29
                                            ──────── $1,432.11

The referee to whom the accounts were referred allowed the account as rendered, with the exception of $115 of the payment of $840 to Thomas & Wilder, preferred creditors, being a portion of the $1,284.83 of claims paid (Schedule D), and charged the assignee with a balance of $771.95. The court at Special Term (10 Daly 122), refused to confirm the report, upon the ground that it was not shown that the conduct of the business by the assignee resulted in benefit to the estate ; that it was shown that the assignee continued the business for the benefit of the assignors to enable them to compromise with their creditors ; and that no proper vouchers were furnished for a large number of payments. The court stated that the account would be referred back to permit the assignee to produce proof as to what proportion of the sum paid to tailors was for work done before the assignment ; but the assignee asked for a re-argument of the exceptions to the referee's report, and this being granted,

and the court reaching the same conclusion as before, a final decree was entered charging the assignee with all the expenses of conducting the business, viz., $1,540.88, and adjudging that the amount in his hands was $2,312.83; being the amount so disallowed and the amount found by the referee, $771.95.

From this decree appeals were taken by the assignee and by J. B. Ellison & Sons, who made a claim against the estate. The assignee appealed from so much of the decree as disallowed certain credits claimed by him and charged him with a balance of $2,312.83, and ordered him to pay costs to Charles de Neufville, a preferred creditor. J. B. Ellison & Sons appealed from so much of the decree as directed the assignee to pay said de Neufville the moneys in his hands.

*Edward P. Wilder*, for the assignee, appellant.

*Jeroloman & Arrowsmith*, for J. B. Ellison & Sons, creditors, appellants.

*Frederic G. Dow*, for Charles de Neufville, creditor, respondent.

J. F. DALY, J.—[After stating the facts as above.]—The account of the assignee as originally filed by him shows conclusively that the business as conducted by him resulted in a loss. The receipts (Schedule A, I, 1), were $1,401.16; and the expenses (Schedule C, 1), were $1,572.06. It is true that his Schedule B of receipts is entitled " statement of all property belonging to the estate and not included in the inventory that has come into my hands; it includes collections from old judgments and accounts not enumerated in inventory, collections from claims evidently overlooked, and collections from parties who bought stock during the time the assignee was supervising the business;" but what part of the $330.25 which that schedule foots up was " collections from parties who bought stock

during the time the assignee was supervising the business"
is not set forth.  Even if the whole amount, $330.25, were
added to the receipts, it would be more than set off by $369
of additional expenses found in Schedule C, 2, and charge-
able to his conduct of the business ; the items being : Rent,
$230 ; Assignor Orsor, $35 ; Bookkeeper Barrowcliffe, $28 ;
Simon, tailor, $16, and Cassayne, tailor and cutter, $60.

But on the hearing before the referee the assignee at-
tempted to show a different result of his carrying on the
business.  He proceeded to reduce the expenses to $1,075.51
by taking from the $1,572.06 of Schedule C, 1, the sum of
$496.55 on the ground that that sum was paid to tailors for
work done upon the orders of the assignors before the as-
signment was made, which work was in their hands and not
completed until after he took possession.  The assignor
Orsor testified that he could tell by reference to the work
book what part of the sums paid to tailors was upon orders
received by the assignee, and fixed it at $480.29.  This sum,
deducted from $976.84, the total paid to tailors and cutter,
leaves $496.55, which the assignee claims must be allowed
him as payment to preferred creditors, the employés being
preferred in the assignment.  He next proceeded to swell
the receipts of the business above the $1,401.16 set out in
his account by the following additions :   First, $285.25
from Schedule B as realized from " collections from parties
who bought stock during the time the assignee was super-
vising the business ; " and second, $471.50, the whole amount
of Schedule A, I, 2 (" collections from debtors enumerated
in inventory, made during same period," i. e. while the as-
signee was conducting the business) ; on the ground that
these collections were from customers for whom suits of
clothes were in process of manufacture when the assign-
ment was made.

The evidence does not justify this claim as to receipts.
As to Schedule B, $330.25 : On March 11th, 1882, he swore
that this was " realized mainly from old judgments and
book accounts," and on May 6th, 1882, he simply offers a
supplemental account setting forth that $285.25 of it was

received for goods sold by him.   There is no reconciling
these statements, and no items are given.   In fact it would
be difficult to say from the testimony that he has actually
sworn to the latter statement.   As to Schedule A, I, 2,
$471.50 :   He swears at one time that the amount was col-
lected from debtors of the firm *during the period he was
selling goods at retail.*   At another time he swears that it
included payments made *after that period* for goods made
up, finished and delivered by him.   Finally, the schedule
itself is entitled " collections from debtors enumerated in
inventory, made during same period," i. e. while he was
selling goods, and it contains opposite each item a date, pre-
sumably the date of the collection, and all the dates are
within .the period in question.   This contradiction is not
explained.   It may also be said of this item, as of the last,
that the assignee nowhere directly swears that the whole
$471.50 was received from customers for suits of clothes
ordered before the assignment and unfinished when the as-
signee took possession.   And if it were, the assignee might
have caused such work to be completed and delivered with-
out continuing the retail business, keeping shop, taking new
orders, selling over the counter, &c., &c., as he did.   In this
view of the case the item is not to be used to swell the
" receipts from the business carried on by the assignee,"
nor to justify his course in carrying on the business. ·

It will be seen therefore that even if the $496.55 paid for
work unfinished at the date of the assignment be deducted
from the $1,572.66 of expenses set forth in Schedule C, 1,
the business still resulted in. a loss :

| | | |
|---|---|---|
| Expenses, Schedule C, 1, balance, . . . | $1,075.51 | |
| Expenses, Schedule C, 2, " . . . | 369 | |
| | | $1,444.51 |
| Receipts, . . . . . . . . | | 1,401.16 |

If we are convinced that the business resulted in a loss,
and that we cannot allow the assignee any expenses incurred
in it, we must not, of course, charge him with the gross re-
ceipts of that business.   We should throw out both receipts

and expenditures thereof, and charge him with the value of the assets as they came into his hands, and allow him the ordinary expenses of administering his trust.    Following this rule we find the assignee chargeable :    *First*, with the actual value of the stock of goods as set forth in the inventory and schedules, being the sum of $1,416.71.    We have no other proof of the value of the stock, the assignee having used it in manufacturing goods for the business he carried on.    The value as set forth in the inventory is properly chargeable against him because he swears that the inventory was made up under his direction.    *Second*, with the value of the stock of new goods turned over to him by the assignors which they had received from J. B. Ellison & Co. This is proved to be worth $828.78.    These goods are not included in the inventory and schedules because it is proved that they were new spring goods consigned between January and April, 1880, while the stock set forth in the inventory and schedules are therein set forth as " winter goods and remnants," and are reduced from $1,923.43 to $1,416.71 in consequence.    *Third*, with the sum realized from the sale of the fixtures at auction, viz. : $249.38, as appears from the proofs on file in the court annexed to the assignee's account. *Fourth*, with the collections from outstanding book accounts, $958.42 (Schedule A, III).    *Fifth*, with the sale of uncollected book accounts, $10 (Schedule A, IV.) ; and *Sixth*, with the collections " mainly from old judgments and book accounts," $330.25 (Schedule B).    He should then be credited with such expenses set forth in Schedule C, 2, as are left after deducting the $369 chargeable to the business and $119.42 auctioneer's charges (as the receipts from the auction sale are not charged to him), viz. : $685.21—$488.42= $196.79.    He should be allowed the preferred claims paid by him and set forth in Schedule D, 2, as far as the referee approved them, viz. : $1,284.83, less $115, leaving $1,169.83. He should not be allowed any of the sums paid to tailors for work unfinished at the date of the assignment, for these reasons : he is not able to state how much was due for work done at the date of the assignment, even if the moneys due

for an entire piece of work not then finished could be apportioned and deemed preferred; and as he is not charged with the sums received for such work which, he says, are set out in Schedule A, 2.

His account therefore should be stated as follows:

**Dr.**

| | | |
|---|---|---|
| Inventory, stock, actual value, . . . | $1,416.71 | |
| Stock not inventoried (J. B. Ellison & Sons), . | 828.78 | |
| Sale of fixtures at auction, . . . . | 249.38 | |
| Book accounts collected, . . . . . | 958.42 | |
| Auction sale of uncollected accounts, . . | 10 | |
| Collections of old judgments, &c., . . . | 330.25 | |
| | | $3,793.54 |

**Cr.**

| | | |
|---|---|---|
| Expenses of administering estate, . . . | $196.79 | |
| Preferred claims paid and allowed, . . . | 1,169.83—1,366.62 |
| Balance in hands of assignee, . . . . . . | | $2,426.92 |

This sum chargeable to the assignee is greater than the amount with which he is charged in the final decree from which he appeals; but as the contesting creditor de Neufville does not appeal from such decree it should therefore be affirmed with costs.

There remains to be considered the appeal of John B. Ellison & Sons. This firm claimed the goods above referred to amounting in value as it is stated to $828.78, and demanded the value thereof to be paid them out of the funds in the assignee's hands, on the ground that the assignee had converted the goods to the use of the estate. The referee refused to consider the claim because it was not involved in the reference of the accounts. In this ruling he was correct. The reference was " to audit and adjust the accounts of the assignee heretofore filed; to ascertain and report the amount of money with which the assignee was chargeable at the time of the filing of his accounts heretofore filed; and to ascertain the amount of commissions which the assignee was entitled to retain and the amounts he ought to retain or pay out for expenses of administration, including

the expenses of his accounting, and for clerk hire, counsel fees and disbursements. There was no submission of the claim of J. B. Ellison & Sons to a portion of the assigned stock or its proceeds. Their claim might have been the subject of a trial before a jury or a referee under section 26 of the Assignment Act, had they chosen to ask for such a trial. They had notice from the account of the assignee as filed that he claimed the goods as part of the assigned estate. When the referee refused to find as they requested upon the evidence they offered to support their claim, they had notice of the want of an effective proceeding on their part to protect their rights if they had any. Yet they contented themselves with filing exceptions to the report and appealing from the decree. We have no power without the trial provided in section 26 to afford the relief asked. This is a proceeding for a final accounting under section 20 of the act. Our powers are prescribed and limited by that section. The claims we are to adjudicate upon under the 4th subdivision of the section are (as appears by the context), the claims of creditors of the assignors for a proportional part of the fund to be distributed, not claims of third parties in hostility to the assignment, or, as in this case, claims against the assignee for conversion.

But there was no conversion by the assignee. The assignee made up the goods of J. B. Ellison & Sons and sold and disposed of them with their consent. This was done because the assignors had already cut and partially converted into garments the said goods. This the assignors had the right to, do under contract with J. B. Ellison & Sons ; and there is no reliable testimony that there was any agreement to account for the goods. The assignors do not say so : Mr. Orsor says the arrangement was that the goods were to be cut up if they had customers for them, and that they were to pay for such as were used. This was a sale. The only witness on the other side was Mr. Lambeth, agent of J. B. Ellison & Sons, and he has evidently no personal knowledge of the agreement between them and the assignors.

The decree must be affirmed, with costs in favor of Charles de Neufville against the assignee personally and J. B. Ellison & Sons.

VAN HOESEN, J., concurred.

Decree affirmed, with costs, as directed in the opinion.